IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DONALD LITMAN et al | : |  |
|                     Plaintiffs, | : | CIVIL ACTION NO. |
|  | : |  |
| v. | : | 22-cv-04530-RAL |
|  | : |  |
| GEICO CASUALTY COMPANY | : |  |
|                     Defendant. | : |  |

**RICHARD A. LLORET**                                                              November 21, 2023
**U.S. Magistrate Judge**

## MEMORANDUM OPINION

Defendant, GEICO Casualty Company ("GEICO"), has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Count II of Plaintiffs' Second Amended Complaint. Doc. No. 51.[1] Count II alleges that GEICO acted in bad faith, pursuant to 42 Pa. C.S.A. § 8371, in connection with its handling of Plaintiffs' insurance claim. Doc. No. 50 at ¶¶ 105–08 ("Second Am. Compl."). Plaintiffs, Donald and Celia Litman, have filed a Response (Doc. No. 52), and GEICO has filed a Reply. Doc. No. 53. In an earlier order I dismissed two counts of Plaintiffs' Amended Complaint and granted leave to amend. *See* Doc. No. 47. Plaintiffs' Second Amended Complaint does not remedy the flaws in their bad faith claim and so, for the reasons discussed below, I will grant Defendant's motion and dismiss Count II, with prejudice.

## FACTUAL AND PROCEDURAL HISTORY

This case has an extensive history, which I discussed in my September 13, 2023 Memorandum Opinion (Doc. No. 46) and which I will summarize again here.

---

[1] Unless otherwise indicated, all references to the electronically docketed record will be cited as "Doc. No. ____ at ____."

Plaintiffs initiated this action in the Philadelphia Court of Common Pleas, and Defendant later removed to the Eastern District of Pennsylvania. *See* Doc. No. 1. The operative complaint is Plaintiff's Second Amended Complaint. *See* Doc. No. 50.

On October 20, 2016, Plaintiff Donald Litman was driving on Interstate 95 when his car was struck by another driver. Second Am. Compl. at ¶ 25. As a proximate result of the accident, Mr. Litman suffered "severe and disabling bodily injuries," requiring multiple surgeries. Second Am. Compl. at ¶ 32. Due to his injuries, Mr. Litman experiences significant difficulties performing the tasks of daily life without pain. *See* Second Am. Compl. at ¶¶ 29–30, 61. In November 2019, Plaintiffs settled a negligence claim against the at-fault driver. Second Am. Compl. at ¶ 50. Thereafter, a dispute arose between Plaintiffs and GEICO—Plaintiffs' auto insurance company—regarding Plaintiffs' claim for underinsured motorist benefits ("UIM Benefits").

Plaintiffs assert that they submitted a claim for underinsurance benefits "almost seven (7) years" ago, and that GEICO "has received on a regular basis all medical information pertinent to evaluating the injuries sustained in the accident by [Mr. Litman], including all medical reports and summaries of his medical expenses." Second Am. Compl. ¶ 59. GEICO disagrees and maintains that, while Plaintiffs opened a first-party benefits claim shortly after the accident, they did not make a claim or demand for UIM Benefits until after the third-party litigation had settled, in November 2019. *See* Doc. No. 51 at ¶¶ 7, 24, 61 ("Second MTD"). Count II of Plaintiffs' Second Amended Complaint alleges that GEICO acted in bad faith by failing to act promptly with respect to Plaintiffs' UIM claim, among other conduct. Second Am. Compl. at ¶¶ 105–08. Defendant now moves to dismiss Count II. *See* Second MTD.

**DISCUSSION**

GEICO's Motion to Dismiss ("Motion") asserts that Plaintiffs' Second Amended Complaint does not state a claim under 42 Pa. C.S.A. § 8371, the Pennsylvania Bad Faith Statute. *See* Second MTD at ¶¶ 32–108. In their Response, Plaintiffs largely fail to engage with GEICO's arguments and instead continue to make allegations regarding GEICO's conduct that are not supported by their pleaded facts or the applicable law. *See* Pls. Br. at 6–20. Because the Second Amended Complaint does not state a plausible claim for bad faith, Count II must be dismissed.

A.   **Legal Standard**

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). At the pleadings stage, I must accept all the complaint's well-pleaded facts as true but should disregard legal conclusions. I must then determine whether the facts alleged in the complaint suffice to show a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

When evaluating a motion to dismiss, I may only consider facts asserted in the complaint, any attachments to the complaint, facts of public record, and matters of which judicial notice may be taken. *Walter v. Southeastern Pennsylvania Transp. Authority*, 434 F.Supp.2d 346 (E.D. Pa. 2006) (Dubois, J.). A "complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

**B.     Plaintiffs' bad faith claim is insufficiently pled.**

Plaintiffs' Second Amended Complaint largely fails to set forth specific facts regarding actions taken by GEICO that could support a plausible inference of bad faith. To survive a motion to dismiss, "plaintiff[s] must plead specific facts as evidence of bad faith and cannot rely on conclusory statements." *Toner v. GEICO Ins. Co.*, 262 F. Supp. 3d 200, 208 (E.D. Pa. 2017) (Slomsky, J.) (*citing Smith v. State Farm Mut. Auto. Ins. Co.*, 506 Fed. Appx. 133, 136 (3d Cir. 2012)). A complaint fails to state a claim where it sets forth only "'bare-bones' conclusory allegations that [do] not provide a factual basis for an award of bad faith damages." *Pasqualino v. State Farm Mut. Auto. Ins. Co.*, No. 15-0077, 2015 WL 3444288, at *3 (E.D. Pa. May 28, 2015) (Buckwalter, J.).

Remedies may be available under Pennsylvania's Bad Faith Statute, 42 Pa. C.S.A. § 8371, "[i]n an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith towards the insured." 42 Pa. C.S.A. § 8371. To prove bad faith, Plaintiffs must show by "clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis." *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017); *see Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super 1994). To succeed under 42 Pa. C.S.A. § 8371, Plaintiffs must show bad faith in the denial of benefits. An insurer does not act in bad faith merely by making a "low but reasonable estimate of an insured's damages." *Johnson v. Progressive Ins. Co.*, 987 A.2d 781, 784 (Pa. Super. 2009). Normal disputes between an insured and an insurer over the value of an insurance claim are not bad faith. *Id*. at 785.

Plaintiffs' bad faith claim, set out in Count II of the Second Amended Complaint, consists of little more than boilerplate allegations and legal conclusions unsupported by specific facts. Plaintiffs allege that GEICO "misrepresented the benefits, advantages, conditions or terms of its insurance policy" (Second Am. Compl. at ¶ 106(a)), "misrepresented pertinent facts or policy or contract provisions relating to coverages at issue" (Second Am. Compl. at ¶ 106(b)), and "misrepresented the law relating to plaintiffs' claim" (Second Am. Compl. at ¶ 106(i)) without explaining specifically what the misrepresentations may have been. Plaintiffs assert that GEICO perpetrated "repeated frauds" upon Plaintiffs (Second Am. Compl. at ¶ 106(i)), without identifying what frauds were committed or when. Similarly, Plaintiffs assert that GEICO "engaged in intrusive inquiries" with the intent to "embarrass and humiliate the Plaintiffs" (Second Am. Compl. at ¶ 106(n)) without identifying the inquiries or pleading any facts regarding GEICO's intent.

Plaintiffs assert that GEICO "refused to pay claims without conducting a reasonable investigation based upon all available information" (Second Am. Compl. at ¶ 106(h)) without describing why GEICO's investigation was not reasonable. Plaintiffs further allege that GEICO "failed to acknowledge and act promptly upon written or oral communications with respect to" Plaintiffs' UIM claim (Second Am. Compl. at ¶ 106(c)), "failed to adopt and implement reasonable standards for the prompt investigation of" Plaintiffs' UIM claim (Second Am. Compl. at ¶ 106(d)), and "did not attempt in good faith to effectuate prompt, fair, and equitable settlement of" Plaintiffs' UIM claim (Second Am. Compl. at ¶ 106(f)) without describing the communications to which GEICO failed to respond or what actions GEICO took to delay resolution of Plaintiffs' claim. These conclusory allegations are insufficient to make out a claim for bad faith.

5

> 1. *The parties' dispute regarding the value of Plaintiffs' claim does not support a claim for bad faith.*

The fact that GEICO declined Plaintiffs' request for policy limits and made a lower counteroffer does not indicate bad faith. *See* Second Am. Compl. at ¶¶ 67, 106. It is not unusual that the parties would disagree over the value of Plaintiffs' UIM claim, and GEICO's failure to offer Plaintiffs' their demanded policy limits cannot, without more, amount to bad faith. *Hollock v. Erie Ins. Exch.*, 842 A.2d 409 (Pa. Super. Ct. 2004) (dismissing bad faith claim where "[t]he underlying facts involve nothing more than a normal dispute between an insured and insurer over the value of an UIM claim"); *Tomaszewski v. Allstate Ins. Co.*, No. 19-0080, 2022 WL 16553375, at *14 (E.D. Pa. Oct. 28, 2022) (Sitarski, J.) (quoting *Johnson*, 987 A.2d at 785) ("[I]t is improper to find that an insurer operated in bad faith where there is 'a normal dispute between an insured and an insurer over the value of a UIM claim.'"). The parties' value dispute will be resolved through litigation of Plaintiff's claim for uninsured motorist benefits (Count I). The dispute alone does not support a claim for bad faith.

> 2. *Plaintiffs' allegations of delay do not support their bad faith claim.*

Plaintiffs' assertion that GEICO "unreasonably and unjustifiably delayed the investigation, evaluation and resolution of the Litman UIM claim" is insufficient to state a claim for bad faith. Second Am. Compl. at ¶ 84. "While 'a bad faith insurance practice can include an unreasonable delay in payment,' 'a long period of time between demand and settlement does not, on its own, necessarily constitute bad faith.'" *Bernstein v. Geico Cas. Co.*, No. 19-1899, 2020 WL 1308226, at *4 (E.D. Pa. Mar. 19, 2020) (Robreno, J); *Williams v. State Farm*, No. 21-0058, 2021 WL 2661615, at *4 (E.D. Pa. June 29, 2021) (Leeson, J.) (dismissing the bad faith claim and holding that even if the

6

entirety of the delay was attributable to the insurer, "a period of nine or ten months, without more, is insufficient to establish bad faith"); *McConnell v. Nationwide Mut. Ins. Co.*, No. 21-4523, 2022 WL 970671 at * 2 (E.D. Pa. Mar. 31, 2022) (Leeson, J.) (finding delay of ten months between claim and offer "insufficient to show bad faith"). By their nature, insurance claims take time to investigate and resolve. *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 590 (E.D. Pa. 1999) (Katz, J.), *aff'd*, 234 F.3d 1265 (3d Cir. 2000) (noting that the "legitimate, if frustrating delays that are an ordinary part of legal and insurance work" do not constitute bad faith). Mere delay in processing a claim is not sufficient to establish bad faith under Pennsylvania law absent other conduct. *Grossi v. Travelers Pers. Ins. Co.*, 79 A.3d 1141, 1154 (Pa. Super. 2013) (finding "investigation proceeded in bad faith, not merely because of the delay, but because there were, *inter alia,* inexcusable periods of inactivity, unreasonable assumptions, and inadequate communication.").

  On its face, the Second Amended Complaint does not suggest that GEICO engaged in inexcusable periods of inactivity or that GEICO's communication with Plaintiffs was otherwise inadequate. For one, Plaintiffs' allegations regarding delay are contradictory. Plaintiffs seem to suggest that GEICO should have opened a UIM claim in 2016 when it opened its first-party claim. However, Plaintiffs do not allege that they actually submitted a claim for UIM benefits at that time. Looking to the Second Amended Complaint, it appears that the Litmans opened their UIM claim in November 2019, after settling their third-party claim. *See* Second Am. Compl. at ¶ 52. Mr. Litman continued to receive treatment for his injuries into 2020 and 2021. Second Am. Compl. at ¶¶ 54–58. After Mr. Litman had undergone the majority of his treatment, GEICO arranged for Mr. Litman to receive an independent medical examination by physician

7

Dr. William Spellman. Second Am. Compl. at ¶ 75. While Mr. Litman was still treating, in December 2021, Plaintiffs sent a letter demanding policy limits. Second Am. Compl. at ¶ 72. Mr. Litman's treatment was completed around January 2022, at which point his condition had plateaued. Second Am. Compl. at ¶ 86. Less than one year later, in November 2022, GEICO made an offer to settle the matter for $250,000. Second Am. Compl. at ¶ 92. Contrary to Plaintiffs' repeated cries of delay, their own pleaded facts suggest that GEICO made an offer to settle within one year of Plaintiffs' policy demand and less than one year after Mr. Litman completed his accident-related medical treatment.

Because Plaintiffs' pleaded facts do not plausibly suggest that GEICO delayed the processing of their UIM claim or that GEICO had no reasonable basis for the actions it took while investigating their UIM claim, Plaintiffs' allegations regarding delay do not state a claim for bad faith.

   3. *GEICO's reliance on an independent medical examination does not establish bad faith*

GEICO's reliance on an independent medical examination ("IME") does not establish bad faith. *See Seidman v. Minnesota Mut. Life Ins. Co.*, 40 F. Supp. 2d 590, 594 (E.D. Pa. 1997) (Reed, J.) ("It is not bad faith for [the insurer] to rely on the IMEs of qualified health professionals who examined [the insured] in a usual and customary fashion" even if the adequacy of those examinations may be disputed by another medical professional). In connection with its investigation, GEICO arranged for Dr. William Spellman, an orthopedic surgeon, to perform an IME of Mr. Litman. Doc. No. 50 at ¶ 75. Under Plaintiffs' insurance policy, GEICO is entitled to request that the insured "submit to examination by doctors chosen by [GEICO], at [GEICO's] expense, as [GEICO] may

8

reasonably require" to assist with its evaluation of a UIM claim. Doc. No. 50-3 at 65 (attaching insurance policy as exhibit). Plaintiffs allege that GEICO acted in bad faith by using an orthopedic specialist for the IME rather than a neurosurgeon, cardiologist, or primary care provider. Doc. No. 50 at ¶¶ 76–77. Plaintiffs do not allege that the results of Dr. Spellman's IME are incorrect or that Dr. Spellman had insufficient information to make a proper evaluation. They simply allege that a different type of medical provider would have had a different perspective on Mr. Litman's injuries. It is not unreasonable for GEICO to seek an IME from an orthopedic surgeon, particularly in light of the fact that Mr. Litman suffered injuries to his cervical spine and hip bone. Second Am. Compl. at ¶¶ 26, 30, 32–33, 54–56, 74. Plaintiffs will have an opportunity to present competing evidence regarding Mr. Litman's injuries in support of their claim for uninsured motorist benefits (Count I), but their allegations regarding GEICO's request for an IME do not state a claim for bad faith.

    4.    *GEICO's actions with respect to Plaintiffs' first party benefits claim cannot support a claim for bad faith in processing their UIM claim.*

Plaintiffs' allegations relating to actions taken by GEICO's first party medical claims handler do not state a claim of bad faith in the handling of their UIM claim. Plaintiffs suggest GEICO acted in bad faith in its evaluation of their UIM claim because the adjuster handling their first party benefits claim did not "offer wage loss benefits after being notified Mr. Litman was unable to work." Second Am. Compl. ¶ 41. While I am sympathetic with the frustrations Mr. Litman has experienced while navigating his insurance claims, these allegations cannot support a finding of bad faith.

First Party Medical Benefits and Underinsured Motorist Benefits are provided under different sections of the Litman's insurance policy, and different rights and

obligations apply to each type of coverage under their policy and Pennsylvania law.² *See* Doc. No. 51-2 at 36–42, 46–21; 75 Pa. C.S.A. §§ 1711, 1731. UIM claims are similar to first party claims "insofar as the disclosure of policies and coverage terms are concerned," but they also closely resemble third-party claims "on issues such as liability, damages, coverage, or even procedure." *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1144 (Pa. Super. Ct. 2006). Given the parties' relative positions, a UIM insurer's "investigation of the claim would not follow the normal course for investigating a first party claim." *Id.* at 1153.

Plaintiffs do not allege that they took any affirmative steps to open a UIM claim or that they submitted evidence of their UIM claim, including medical bills or other proof of loss, to GEICO's UIM claims department. Rather, Plaintiffs suggest that GEICO should have, on its own, opened a UIM claim when "[GEICO] received a notice of the accident and a report of injuries from [Mr. Litman's doctor], which included notice that [Mr. Litman] was unable to return to work due to his accident related injuries and damages" and that GEICO's failure to do so indicates bad faith. *See* Second Am. Compl. at ¶ 38. Plaintiffs have indicated that they did not give GEICO's UIM claims department

---

² The Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") defines "first party benefits" as "[m]edical benefits, income loss benefits, accidental death benefits and funeral benefits." 75 Pa. C.S.A. § 1702. First party coverage is mandatory under Pennsylvania law and benefits will be paid without regard to fault. *See* 75 Pa. C.S.A. § 1711(a); *Corbin v. Khosla*, 615 Pa. 186, 196, 42 A.3d 254, 260 (2012) ("[T]here is no requirement to prove fault or liability in order to make a claim for first-party benefits. Instead, such claims are payable upon reasonable proof of the amount of the benefit."). In contrast, uninsured or underinsured motorist benefits provide an optional, additional layer of coverage intended to protect an insured "from the risk that a negligent driver of another vehicle will cause injury . . . and will have inadequate coverage to compensate for the injuries caused by his negligence." *Paylor v. Hartford Ins. Co.*, 640 A.2d 1234, 1235–36 (Pa. 1994) (quoting *Wolgemuth v. Harleysville Mut. Ins. Co.*, 535 A.2d 1145, 1149 (Pa. Super. Ct. 1988)); *see also* 75 Pa. C.S.A. § 1731(a); *Hannigan v. Workers' Comp. Appeal Bd.*, 860 A.2d 632, 634 (Pa. Commw. Ct. 2004) ("[B]y definition, the recovery of uninsured motorist benefits is premised on the liability or negligence of another driver; otherwise, there would be no legal entitlement to the recovery of damages."). "UIM coverage is triggered when the tortfeasor's liability coverage is not sufficient to cover the injuries incurred in an accident." *Generette v. Donegal Mut. Ins. Co.*, 598 Pa. 505, 520, 957 A.2d 1180, 1189 (2008).

consent to open a claim and access their first party claims file until November 2019. *See* Second Am. Compl. at ¶ 52. Given the separation between its first party and UIM functions, GEICO could not have shared information between its first party and UIM claims adjusters until it received that authorization.

Contrary to Plaintiffs' assertions, the fact that GEICO did not advise Plaintiffs to open a UIM claim and "did not communicate . . . the available coverage to offer additional benefits" does not indicate bad faith. *See* Second Am. Compl. at ¶ 39. "[A]bsent evidence of fraud or intentional deception, an insurer has no affirmative duty to advise its insured of every potential claim or benefit that could exist under a policy." *Albert v. Erie Insurance Exchange*, 65 A.3d 923, 929–30 (Pa. Super. Ct. 2013) (*citing Miller v. Keystone*, 636 A.2d 1109, 1113 (Pa. 1994)). Aside from their conclusory assertion that GEICO perpetrated "repeated frauds" upon Plaintiffs (Second Am. Compl. at ¶ 106(i)), Plaintiffs have made no allegations that plausibly indicate that GEICO intended to defraud or to intentionally deceive Plaintiffs in connection with their handling of their UIM claim.

Because GEICO was not authorized to affirmatively open a UIM claim until November 2019 nor was the first party claims handler obligated to advise Plaintiffs regarding other available coverage, Plaintiffs' allegations regarding actions taken by GEICO's first party medical claims handler cannot support a claim for bad faith in the handling of their UIM claim.

     5.    *GEICO's conduct during this litigation does not establish bad faith.*

Plaintiffs' allegations regarding GEICO's litigation-related conduct cannot state claim for bad faith as a matter of law. Plaintiffs suggest that the fact that GEICO engaged counsel to assist in defending the UIM claim in itself indicates bad faith. Pls. Br. at 5.

11

Not so. The Pennsylvania Bad Faith Statute, 42 Pa. C.S.A. § 8371, "provides a remedy for bad-faith conduct by an insurer in its capacity as an insurer and not as a legal adversary in a lawsuit filed against it by an insured." *Slater v. Liberty Mut. Ins. Co.*, No. 98-1711, 1999 WL 178367, at *2 (E.D. Pa. Mar. 30, 1999) (Waldman, J.). Thus, an insurer's conduct as a legal adversary cannot be the basis for a statutory bad faith claim. *See Phan-Kramer v. Am. States Ins. Co.*, No. 23-01867, 2023 WL 4867421, at *4 (E.D. Pa. July 31, 2023) (Wolson, J.). An insurer is entitled to investigate legitimate defenses against claims made by its insured, and to raise those defenses in litigation. *See, e.g., O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 910 (Pa. Super. Ct. 1999) ("[I]n [the] absence of evidence revealing dishonest purpose, it is not bad faith for insurer to aggressively investigate and protect its interests.") (*citing Jung v. Nationwide Mut. Fire Ins. Co.*, 949 F. Supp. 353, 360 (E.D. Pa. 1997) (Cahn, J.)); *Condio*, 899 A.2d at 1153 (acknowledging a UIM insurer is "entitled to employ counsel to act on their behalf in protecting their interests"). Plaintiffs have not identified any wrongdoing by GEICO's counsel in the processing of Plaintiffs' insurance claim, and the alleged litigation-related conduct cannot support a claim for bad faith as a matter of law.

## CONCLUSION

I will enter an order granting the motion to dismiss Count II with prejudice.

BY THE COURT:

  /s/ Richard A. Lloret
**RICHARD A. LLORET**
**U.S. MAGISTRATE JUDGE**